IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00330-MSK-GPG-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MANUEL RAMIREZ-ARROYO,

    Defendant.

_____

**RESPONSE TO GOVERNMENT'S MOTION TO
RESCIND PRETRIAL RELEASE ORDER**
_____

    The government believes that Mr. Ramirez-Arroyo ("Mr. Ramirez") is among the small group of people who must be detained pending trial. It persists in this belief despite the fact that both a state and a federal magistrate judge have now found Mr. Ramirez to be a good candidate for pretrial release. Those judges have done so with good reason—suitable conditions exist to ensure that Mr. Ramirez presents no risk of flight or danger to the community. In seeking review of the federal magistrate judge's decision to release Mr. Ramirez to his daughter as third-party custodian, the government offers nothing meaningfully new in terms of evidence or argument—it merely asks this court to reach a different result. This Court should reject the government's invitation, and deny its motion to rescind the magistrate judge's release order (Doc. No. 14).

I.    **Background.**

Local authorities in Mesa County arrested Mr. Ramirez in June. (Doc. No. 14-1 at 6.) He was released on bond a short-time later, and in July, the federal government indicted him on a single illegal reentry count, 8 U.S.C. § 1326(a), (b)(1). (*Id.* at 11; Doc. No. 1.)

Earlier this week, Mr. Ramirez appeared for a detention hearing before Magistrate Judge Crews. (Doc. No. 14-1.) After carefully considering the parties' evidence and argument, Judge Crews ordered Mr. Ramirez released to his daughter's custody, pending probation's assessment of her residence. (Doc. No. 14-1 at 17-21.) Probation subsequently confirmed to undersigned counsel that Mr. Ramirez' daughter's residence was visited and approved as appropriate for release.

The government now seeks to rescind the release order, and this Court briefly stayed Mr. Ramirez' release to consider the government's motion and Mr. Ramirez' response. (Doc. No. 15.)

II.   **Legal Framework.**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). It is for this reason that the Bail Reform Act significantly favors release over detention. *See, e.g.*, *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). "Generally, the Act allows the detention of a defendant pending trial only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Ingle*, 454 F.3d 1082, 1084 (10th Cir. 2006) (emphasis added).

The government bears the burden of proving risk of nonappearance by a preponderance of the evidence, and dangerousness to any other person or the community by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

This Court reviews a magistrate judge's release order *de novo*. 18 U.S.C. § 3145(a)(1). Its decision on release is guided by four factors under 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community.

**III.  The government has failed to prove that no conditions of release will reasonably assure Mr. Ramirez's appearance and the safety of the community.**

The government argues that Mr. Ramirez should be detained because he's charged with illegal reentry and faces immigration consequences, because he allegedly fled from state officers when faced with arrest this summer, and because (in its view) its evidence against Mr. Ramirez is strong. The government is wrong, and in fact the § 3142(g) factors overwhelmingly favor Mr. Ramirez' release.

**A. The government seeks to impose a presumption of detention where none exists.**

The government argues (at 5, 10) that Mr. Ramirez should be detained because he is charged with illegal reentry—an offense, it says, that has a "unique posture." That is, Mr. Ramirez faces likely removal from the United States.

But of course, potential immigration consequences are attendant in *every* illegal reentry charge; the offense is predicated on a defendant's alleged unlawful presence in the country. The government's argument, therefore, amounts to seeking a categorical rule of detention for individuals charged with illegal reentry.

3

But that's an argument that's contradicted by the Bail Reform Act, which does not include illegal reentry among the offenses subject to presumptive detention. *See* § 3142(e)(3). And it is similar to an argument rejected by the Tenth Circuit, which has explained that the risk of involuntary removal by immigration officials is not proof that a defendant would flee, such as would support pretrial detention. *See United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). It is, in short, an argument that should be rejected outright by this Court.

Unsurprisingly, courts around the country have released defendants charged with illegal reentry. *See, e.g.*, *United States v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1292-95, 1300 (D. Utah 2017); *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

**B. Mr. Ramirez's alleged flight from state law enforcement this summer is not proof by a preponderance of the evidence that no conditions of release exist to assure his appearance in these federal proceedings, let alone proof by clear and convincing evidence that he presents a danger to the community.**

The government also argues (at 6-8) that Mr. Ramirez' alleged flight when pulled over by state troopers this summer meets its burden of establishing that no conditions exist to either assure his appearance or protect the community. It cites no authority in support of either proposition, and the inference it seeks to draw isn't persuasive.

As to flight, the government contends that because Mr. Ramirez allegedly fled arrest, he won't show up for court. But that's a false equivalency, and certainly not proof by a preponderance of the evidence. Flight from law enforcement on the side of the road, in a moment of panic, is completely separate from choosing to appear in court for federal proceedings *after* that arrest. The time for reflection, as well as the significant additional consequences of flight (from putting his third-party custodian daughter in a compromised situation, to foreclosing any possible challenge

in immigration court, to being held in contempt or charged with new crimes), all strongly militate against that possibility, and indicate that Mr. Ramirez will appear as ordered.

That's of course not to say that the allegations in the state trooper's probable cause affidavit are not serious. As Magistrate Judge Crews recognized, they present "troubling circumstances" (Doc. No. 14-1 at 20), and if proven, then Mr. Ramirez made a very poor decision, one that made a bad situation worse. He will have to answer those accusations in state court, where, notably, the state court considering that very conduct nonetheless allowed Mr. Ramirez to be released on bond. (Doc. No. 14-1 at 11).

Additionally and importantly, every indication is that this appears to be an isolated incident, one deeply out of character for Mr. Ramirez. Indeed, there is no suggestion in the record that Mr. Ramirez has ever failed to appear for court, or that he ever engaged in conduct similar to the allegations in the state police report.

Courts routinely recognize in other contexts that people sometimes act entirely out of conformity with their character, and that such aberrations may be mitigating. *Cf. United States v. Working*, 224 F.3d 1093 (9th Cir. 2000) (judicial finding that the defendant's crime was "aberrant conduct" can serve as justification for downward departure from sentencing guidelines); *United States v. Williams*, 610 F.3d 271, 279 n. 9 (5th Cir. 2010) (death penalty jury may find, as a mitigating factor, that the crime was out of character and an isolated incident); *Torres-Guzman v. INS*, 804 F.2d 531 (9th Cir. 1986) (to determine whether to suspend deportation based, in part, on a finding of good moral character, immigration court may not base its finding on a single, isolated incident, but rather must weigh the favorable and unfavorable facts in evidence). This Court

should do the same here, and reject the government's effort to define Mr. Ramirez' character on a single (and still unproven) incident.

As to risk, the government doesn't offer much at all. It doesn't argue that Mr. Ramirez presents a risk to any person, just that he presents a broadly conceived danger to the community. To support that assertion, it relies solely on the state trooper's probable cause affidavit, noting the potential risks created during that incident.

But it bears repeating that the government's burden here is clear and convincing evidence, meaning that its evidence must "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984) (citations and internal quotation marks omitted). This lone incident, and the speculation of future risks attendant in speculative future flight, does not meet this standard. And the government fails to point to anything else on this prong. *Compare, e.g.*, *Vasquez-Benitez*, 919 F.3d at 551 (affirming release of defendant charged with illegal reentry, notwithstanding instances of violence against others in past).

### C. The weight of the evidence is speculative at this early stage, and, in any event, is only one factor.

Naturally, the government believes it has a strong case. (Gov't Mtn. at 8-9.) Defense counsel, however, received discovery only yesterday, and so can take no position on the weight of the evidence, let alone any potential collateral attacks on the procedural validity of Mr. Ramirez' prior removal order. *See* 8 U.S.C. § 1326(d).

But even accepting the government's representation, its implication that Mr. Ramirez is less likely to appear doesn't follow. His priority, plainly, is to remain in the United States with his family and community. And even if this factor can be said to favor the government, the other

factors nonetheless warrant release.  *See, e.g., Vasquez-Benitez*, 919 F.3d at 551 (release appropriate despite strong evidence in illegal reentry case, because other factors favored release); *Lizardi-Maldonado*, 275 F. Supp. 3d at 1293 (same).

### D. The § 3142(g) factors overwhelmingly support Mr. Ramirez' release to his daughter as third-party custodian.

The government doesn't contest that Mr. Ramirez has strong community ties in Colorado. He and his wife of 26 years reside in Rifle, along with his daughter and his two grandchildren. He works with his daughter as part of an auto glass franchise. His parents reside in nearby Carbondale, as well as his two sisters. (Doc. No. 14-1 at 20.)

Many family members supported Mr. Ramirez at the detention hearing, and six people wrote letters attesting to his strong character, describing him as "a caring and engaging father," a man who "worked incredibly hard to bring financial stability to his loved ones," "an individual of purpose and great values," "a valued member of our community," and "a family man whose only purpose is to be a good example for these children." (Doc. No. 11-1.)

Mr. Ramirez' criminal record consists only of a twenty-three year old attempted controlled substance conviction (which is too old to even accrue criminal history points, *see* U.S.S.G. § 4A1.2(e)), and a fourteen-year old illegal reentry conviction (which barely accrues points). As Magistrate Judge Crews observed, nothing in his past convictions "indicates a history of violent criminal behavior." (Doc. No. 14-1 at 20.)  And as the D.C. Circuit recently explained, "illegal reentry is a nonviolent crime." *Vasquez-Benitez*, 919 F.3d at 551.

The government's motion is conspicuously quiet about these factors favoring release. But these reasons help demonstrate why *two* judges have now determined that Mr. Ramirez need not be detained prior to facing trial.

That is, a state judge in Mesa County, considering factors similar to those under § 3142, *see* Colo. Rev. Stat. § 16-4-103 (listing factors for bond and conditions of release), permitted Mr. Ramirez' release on bond.  Judge Crews, similarly, determined that the government had not met its burden for detention, and that Mr. Ramirez could be released to the custody of his daughter, as third-party custodian.

Finally, the government never explains why the third-party custodian condition of release is unworkable here—it merely says that Mr. Ramirez had family ties in June and that didn't keep him from running from the police.  (Gov't Mtn. at 8.)  But being a third-party custodian is a meaningful commitment, and flight would put his daughter, with whom Mr. Ramirez lives and works, in a precarious position.  It would also prevent him from ever challenging his potential removal from this country; indeed, "he must not flee if he wishes to preserve his opportunity to obtain withholding of removal in his immigration case." *Vasquez-Benitez*, 919 F.3d at 551.

All told, two magistrate judges, and not the government, got it right as to Mr. Ramirez— the presumption against detention is soundly applied.

**IV.     Conclusion.**

The government failed to meet its burden of proving that Mr. Ramirez must be detained. Accordingly, Mr. Ramirez respectfully moves the court to deny the government's motion to rescind the magistrate judge's release order in this case.

    Respectfully submitted,

    VIRGINIA L. GRADY
    Federal Public Defender


    s/Laura Suelau
    LAURA SUELAU
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    laura.suelau@fd.org
    Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Peter Hautzinger, AUSA
Email: Peter.Hautzinger@usdoj.gov

Aaron M. Teitelbaum, AUSA
Aaron.Teitelbaum@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Manuel Ramirez-Arroyo                    (via Mail)


s/Laura Suelau
LAURA SUELAU
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
laura.suelau@fd.org
Attorney for Defendant